# Burkheart v. Commonwealth.

### (Decided Oct. 7, 1932.)

C. W. NAPIER and J. M. BAKER for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Johnny Burkheart has appealed from a judgment sentencing him to life imprisonment for murder. About 10 p. m. Thursday, April 16, 1931, some one killed Alafair Pennington. This was a brutal, cowardly assassination.

This woman lived with her brother, Henry Pennington, on Coon creek, and was shot at his fireside, with a shotgun, some of the shot making scars about the fireplace. The evidence indicates she was shot by a gun thrust in at the slightly opened door. Her back was turned to her assailant, and the shot took effect in the lower part of the nape of her neck and the upper part of her shoulder, and her death followed immediately.

This was a mountain home; a fire was raging in the woods thereabout. Henry Pennington and neighboring men were engaged in fighting the fire, and no one was in this home at the time except Henry Pennington's wife and the deceased. About a mile and a half from this Pennington home and on Wolf creek lived Bill Burkheart and his family; two of his sons being Johnny Burkheart and George Burkheart. Henry Pennington's wife was a daughter of Bill Burkheart, and she and Alafair Pennington, who made her home at Henry Pennington's, frequently visited the Burkheart's, and Alafair Pennington during the year previous to her death had spent some time in the Burkheart home and assisted them in canning and preserving fruit. Some time before her death it became noised about that she was soon to become a mother and that Johnny Burkheart was the cause of her condition. His companions began to tease him and call him, "Daddy." This enraged him, and he made threats that he would

kill Miss Pennington, and, when she was killed, he, his father, and his brother, George, were charged by indictment with having done this murder, pursuant to a conspiracy, and by further counts each of them was charged with the murder and the others with aiding and abetting.

They moved for separate trials, and, upon the election of the commonwealth, Johnny was tried with the result noted.

For reversal he urges the following:

First, that the court erred in admitting evidence against him. In his testimony Henry Pennington was, over the objection of the defendant, permitted to state that on Saturday night before the killing, as he and his family were eating supper, Miss Alafair Pennington saw some one at the window and said, "Lord have mercy! Look at that man with that black stick!" This the defendant says was improperly admitted because "it occurred several (five) days before the killing and does not throw any light on the transaction." The witness should not have repeated Miss Pennington's words, and should have said his attention was called to some one being at the window, but, as the defendant says, these words throw no light on the transaction. Hence their admission did not prejudice the defendant. Henry Pennington testified he ran to the window and saw a man standing there by the chimney, and he stepped behind the chimney and stood there. As soon as Pennington could quiet his sister, he got his gun and went out there and the man was gone. When asked who was the man he had seen, he said: "It looked like Johnny Burkheart to me." No objection was made to any of this evidence except to Miss Pennington's exclamation, and we do not regard the admission of it as prejudicial.

His next ground for reversal is that the court erred in giving an instruction on conspiracy because, as he says, there was no evidence thereof. The commonwealth had shown the homicidal threats made by the defendant against Miss Pennington. There was evidence Johnny Burkheart was at the window of this Pennington home on the Saturday night before the killing and left when his presence was discovered. Tracks of two men were found the next morning after the homicide leading from this Pennington home in the

direction of the Burkheart home. These tracks had apparently been made by men running, as they were far apart. One of these tracks had been made by a man wearing leather shoes and the other by a man wearing rubber boots. These Burkheart boys were shown to have and to have worn such footwear, of size corresponding to the tracks.

One of these men had tripped and fallen over some brush trimmed off an apple tree, and near this track was found a .38 special Smith & Wesson pistol. It was shown Johnny Burkheart had this pistol the day before the homicide. Bill Burkheart had bought this pistol from Buddy Boggs on Sunday, and it was delivered to him on Tuesday before the homicide. A woman, who lived in sight of this Pennington home, and about four or five hundred yards from it, testified that the woods were on fire that night, and she was watching the fire; that she saw a carbide light near to and just back of this Pennington home; that she heard a shot up there, and saw the light no more. On the day following the homicide, Bill Burkheart was seen to step aside and get a carbide lamp out of some ivy, which he explained he had hidden there that morning. Henry Pennington was at the Burkheart home in the early part of the night of the killing, and was told Bill Burkheart had gone to Harlan, George Burkheart had gone for some meal, and Johnny Burkheart had gone to see his sweetheart. The time of his visit was indefinite. Belvie Green says it was the evening before. Henry Pennington says it was in the early part of the night. Bill Burkheart got in and ate his supper about an hour and a half after dark. He says he retired a little after 10 o'clock. He was up the next morning, had his breakfast, and left for Henry Pennington's so early that he had to use a carbide lamp to light his way. This fire had been started in the woods, the countryside was alarmed, and men were out fighting the fire, but none of the Burkhearts were there, or, so they say, knew anything of the fire in the woods. With evidence of these things the court did not err in instructing on conspiracy.

The final complaint is of the instructions which defendant claims should be modified by making the insertions therein which the court ordered made in Martin v. Com., 193 Ky. 835, 237 S. W. 1066, but in the Martin Case four of the six alleged conspirators were jointly

tried and convicted, hence the insertions were ordered, but this defendant was tried alone and under proper instructions. We have disposed of all the alleged errors discussed.

Judgment affirmed.